1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                    EASTERN DISTRICT OF WASHINGTON
8
9   ANTHONY FARINO,                    No. 1:15-CV-03146-JTR
10
                Plaintiff,             ORDER GRANTING
11                                     DEFENDANT'S MOTION FOR
          v.                           SUMMARY JUDGMENT
12
13  CAROLYN W. COLVIN,
14  Commissioner of Social Security,
15
                Defendant.
16

17      **BEFORE THE COURT** are cross-motions for summary judgment.  ECF

18  No. 26, 28.  Attorney D. James Tree represents Anthony Farino (Plaintiff); Special

19  Assistant United States Attorney Nicole Jabaily represents the Commissioner of

20  Social Security (Defendant).  The parties have consented to proceed before a

21  magistrate judge.  ECF No. 6.  After reviewing the administrative record and briefs

22  filed by the parties, the Court **GRANTS** Defendant's Motion for Summary

23  Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

24                              **JURISDICTION**

25      Plaintiff filed applications for Supplemental Security Income (SSI) and

26  Disability Insurance Benefits (DIB) on April 18, 2012, alleging disability since

27  November 18, 2011, due to degenerative disc disease, tremors, bipolar disorder,

28  schizophrenia, high blood pressure, high cholesterol, arthritis, neck pain, tingling

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

and numbness in both legs and left arm, and back pain.  Tr. 214-223, 233, 237.
The applications were denied initially and upon reconsideration.  Tr. 139-146, 148-160.  Administrative Law Judge (ALJ) Ruberta M. Alexis held a hearing on August 26, 2013, and heard testimony from Plaintiff and vocational expert Michael Swanson.  Tr. 40-82.  At the hearing, Plaintiff amended his alleged date of onset to April 18, 2012.  Tr. 44.  The ALJ issued an unfavorable decision on October 24, 2013.  Tr. 19-34.  The Appeals Council denied review on June 21, 2015.  Tr. 1-7.  The ALJ's October 24, 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on August 19, 2015.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 46 years old at the amended date of onset.  Tr. 216.  Plaintiff completed the twelfth grade while attending special education courses.  Tr. 238.  He received specialized training in silk screening.  *Id*.  His work history includes telemarketing, driving a forklift, cleaning carpets, and property management.  Tr. 239.  At the hearing, Plaintiff stated he had stopped working by the time he filed his application for benefits on April 18, 2012.  Tr. 44.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law *de novo*, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v.*

*Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

**ADMINISTRATIVE DECISION**

On October 24, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since April 18, 2012, the amended onset date. Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative disk disease of the lumbar and cervical spine; schizoaffective disorder versus bipolar disorder versus mood disorder not otherwise specified; anxiety disorder not otherwise specified; and polysubstance abuse and/or dependence. Tr. 22.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 22.

At step four, the ALJ assessed Plaintiff's residual functional capacity and determined he could perform a range of light work with the following limitations:

> he can occasionally balance, stoop, kneel, crouch, crawl, or climb. He should avoid concentrated exposure to cold, vibration, fumes, dust, or hazardous equipment. He can competitively perform simple and repetitive tasks except he cannot engage in fast-paced production. He can tolerate occasional contact with the general public. He can work in proximity to coworkers but not in coordination.

Tr. 24. The ALJ identified Plaintiff's past relevant work as carpet cleaner, forklift operator, warehouse worker, telemarketer, and construction worker II and found Plaintiff was not able to perform any of his past relevant work. Tr. 32.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of parking lot valet, flagger, and cafe attendant. Tr. 33. The ALJ concluded Plaintiff was not under a

disability within the meaning of the Social Security Act at any time from the
amended date of onset, April 18, 2012[1], through the date of the ALJ's decision,
October 24, 2013.  Tr. 33.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's
decision denying benefits and, if so, whether that decision is based on proper legal
standards.  Plaintiff contends the ALJ erred by (1) failing to properly credit
Plaintiff's symptom reports; (2) failing to properly consider and weigh medical
source opinions, and (3) failing to properly consider evidence of Plaintiff's spinal
stenosis and nerve root compression.

**DISCUSSION**

**A.    Credibility**

Plaintiff contests the ALJ's adverse credibility determination in this case.
ECF No. 26 at 16-19.

It is generally the province of the ALJ to make credibility determinations,
*Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific
cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent
affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's
testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d
1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).
"General findings are insufficient:  rather the ALJ must identify what testimony is
///

---

[1]The Court notes that in finding number eleven of the ALJ's decision, the
ALJ stated Plaintiff had not been under a disability from November 18, 2011,
through the date of the decision.  Tr. 33.  However, the Court attributes this date as
a scribner's error as the ALJ consistently acknowledged the amended onset date
throughout the rest of the decision.  Tr. 19, 21.

not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of his symptoms. Tr. 25. The ALJ reasoned that Plaintiff was less than fully credible because (1) Plaintiff's impairments existed untreated and at a more severe level prior to his onset date while he was gainfully employed, Tr. 25-27; (2) Plaintiff gave inconsistent reports regarding his psychological symptoms and treatment, Tr. 27; (3) Plaintiff gave inconsistent reports as to the degree of his substance use, Tr. 27; (4) Plaintiff was non-compliant with his use of prescription opiate medications, Tr. 27-28; and (5) Plaintiff's reported activities were inconsistent with the alleged severity of his symptoms, Tr. 29.

Plaintiff only challenges the ALJ's first and fifth reasons for finding him less than fully credible. ECF No. 26 at 16-19. Therefore, the Court need not address the remaining unchallenged reasons provided by the ALJ. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief).

### 1.    Plaintiff's impairments prior to date of onset

In her determination, the ALJ found that Plaintiff's psychological impairments and substance abuse had gone untreated for several years during which he was gainfully employed and the psychological impairments had not worsened since Plaintiff's alleged date on onset. Tr. 25-27. The ALJ found this inconsistent with a post onset date inability to adequately concentrate or tolerate social environments due to psychological impairments. *Id*.

Plaintiff argues the ALJ's conclusion is contradictory because she found he was unable to perform his past relevant work at step four. ECF No. 26 at 16. Yet, the vocational expert's testimony at the hearing illustrates that the jobs of carpet

cleaning, forklift operator, warehouse worker, and construction worker were precluded due to exertional limitations, not psychological limitations. Tr. 77. The only past relevant job that was precluded due to Plaintiff's psychological limitations was the telemarketing job, which was precluded due to contact with the public. *Id.* At the hearing, Plaintiff admitted he did not do the job, stating "I cheated. I would use - - I'd use some people that were under me to take care of all that for me because I knew I couldn't do it." Tr. 65. Therefore, the ALJ's conclusion that the pre onset date severity of Plaintiff's psychological limitations did not preclude gainful activity in the past is not inconsistent with a step four determination that post onset date psychological limitations precluded the job of telemarketing, because Plaintiff admitted he failed to perform the job at the level expected of him prior to his onset date. A medical condition that had existed for a long period of time without evidence of worsening, which did not prevent work in the past should not prevent present or future work. *Gregory v. Bowen*, 844 F.2d 664 (9th Cir. 1988). Here, Plaintiff's psychological impairments did not prevent him from gainful employment in the past, therefore it should not prevent it in the future.

### 2.    Plaintiff's reported activities

The ALJ found that Plaintiff's reported activities were inconsistent with the alleged severity of his symptoms and limitations, noting that Plaintiff was able to play video games, drive, grocery shop, play with this son, help his father-in-law pull electrical wires, mop basketball floors, and exercise to lose weight. Tr. 29. The ALJ determined that these activities were inconsistent with Plaintiff's reported limitations in sitting, standing, walking, maintaining concentration, and tolerating social exposure. *Id.*

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of

physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

Plaintiff argues he did not spend a substantial part of his day performing these activities and the ALJ did not identify the noncredible testimony with any specificity. ECF No. 26 at 18-19. Here, the ALJ determined that Plaintiff's activities contradicted his other testimony, not that he was engaged in pursuits involving performance of activities that were transferable to the work setting. Therefore, Plaintiff spending a substantial part of the day engaged in these activities is not a necessary element of the ALJ's finding. Additionally, the ALJ did provide the necessary specificity regarding testimony: she started by summarizing Plaintiff's testimony, Tr. 24-25, then she identified specific evidence showing that Plaintiff was engaged in activities that were inconsistent with this testimony, Tr. 29. Therefore, this reason meets the specific, clear and convincing standard.

Based on the foregoing, the Court finds the ALJ did not error in her credibility determination.

**B.    Medical Opinions**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions expressed by Kirk Strosahl, Ph.D., Jennifer Schultz, Ph.D., and Reese Copeland, M.A. ECF No. 26 at 5-15.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the

claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id*.

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the treating physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester*, 81 F.2d at 830. When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician. *Id*. at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

## 1.   Kirk Strosahl, Ph.D.

On May 9, 2012, Dr. Strosahl completed a Documentation Request for Medical or Disability Condition form from the Washington State Department of Social and Health Services (DSHS). Tr. 334-337. He stated Plaintiff's schizo-

affective disorder limited his ability to work by precluding interaction with peers or customers and becoming unpredictable when under stress. Tr. 334. He stated Plaintiff was unable to participate in work activities and unable to participate in activities related to preparing for and looking for work, citing concentration deficits, distractibility, lack of comprehension of simple and multi-step instructions, and suspicion and fear of intentions of others. *Id*. He stated Plaintiff did not have any lifting or carrying limitations. Tr. 336. He opined that Plaintiff's condition impacted his ability to access services, stating that without the direction of his spouse Plaintiff would probably not be attending appointments. *Id*. He opined that Plaintiff's condition would likely limit his ability to work, look for work, or train to work for twelve months minimum. *Id*.

The ALJ gave this opinion "minimal to no weight" because it was inconsistent with Plaintiff's reported activities and the longitudinal psychological findings since April 2012. Tr. 30.

Substantial evidence supports the ALJ's determination that Plaintiff's psychological conditions had remained constant for a number of years and that these conditions had not prevented him from working over that time. Plaintiff reported being diagnosed with bipolar disorder and schizophrenia in 1995, well before he stopped working. Tr. 365. He completed treatment for alcohol abuse in 1995. Tr. 375. He reported two episodes of hallucinations and psychosis in 2006 and 2009, while he was still working. Tr. 314. Since his onset date, Plaintiff reported that medications have helped in reducing voices, nightmares, and racing thoughts. Tr. 46-47, 49-50, 366, 388, 571. Additionally, providers observed a stabilization of psychiatric symptoms and even an improvement of symptoms with treatment. Tr. 350, 537, 563, 569. When Plaintiff's symptoms increased, the increase was accompanied by taking non-prescribed medications. Tr. 548, 552, 554, 556. Therefore, substantial evidence supports the ALJ's determination and this is a legally sufficient reason to reject Dr. Strosahl's opinion.

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

### 2.    Jennifer Schultz, Ph.D.

On July 23, 2012, Dr. Schultz completed a consultative examination of Plaintiff. Tr. 365-370. She diagnosed Plaintiff with a rule out diagnosis of schizoaffective disorder, polysubstance dependence, and a rule out diagnosis of learning disorder not otherwise specified, stating that "it is difficult to determine what his diagnosis would be after detoxing for an extended period of time." Tr. 368-369. Dr. Schultz gave the following medical source statement:

> Mr. Farino's ability to understand and reason is impacted by his substance use, possible learning problems, and possible schizoaffective disorder. It is at a low level currently. His memory is sketchy for historical information and his concentration is poor and would impact his ability to learn and perform jobs. His social interaction is also limited and is impaired as he has no friends and feels that others are talking about him. These factors prevent him from interacting with others in a work situation with customers, supervisors, or other staff. Mr. Farnio's ability to tolerate or adapt to stress is poor.

Tr. 369.

The ALJ gave Dr. Schultz's opinion "minimal weight" because (1) Plaintiff has a history of maintaining employment despite his schizoaffective disorder and/or polysubstance dependence and has consistently reported improvement in his psychological state since his alleged date of onset, (2) Plaintiff gave Dr. Schultz a psychological history and substance use report inconsistent with the rest of the evidence of record, (3) the opinion is inconsistent with Dr. Schultz's recorded observations made in the report, and (4) Plaintiff's reported activities were inconsistent with Dr. Schultz's opinion. Tr. 30-31. Plaintiff only challenges the third reason the ALJ gave for rejecting her opinion. ECF No. 26 at 13-15. Therefore, the Court need not consider the unchallenged reasons the ALJ provided for rejecting Dr. Schultz's opinion. *See Carmickle*, 533 F.3d at 1161 n.2 (The court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief).

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

1    The ALJ's third reason for rejecting Dr. Schultz's opinion, that the opinion
2  was inconsistent with Dr. Schultz's observations, is legally sufficient.  An ALJ
3  may cite internal inconsistencies in evaluating a physician's report as a reason to
4  reject such an opinion.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).
5  The ALJ found that Dr. Schultz's reports of good hygiene, cooperative behavior,
6  good eye contact, normal thought process, and average to low intelligence was
7  inconsistent with her opinion of psychological incapacity.  Tr. 31.  Plaintiff argues
8  that the ALJ "cherry-picked" this evidence and that a review of the evaluation
9  shows that the ALJ ignored Dr. Schultz's statements that Plaintiff "rocked
10 constantly and his body shook at times. Speech was quiet, [and] affect flat," and
11 the ALJ ignored all the abnormal testing on the Mental Status Examination.  ECF
12 No. 28 at 13-14 *citing* Tr. 99.[2]  A review of the Mental Status Examination results
13 only shows some abnormal results:

> Mr. Farino drove to the office.  He was on time for the appointment.
> He appeared his stated age, he was dressed appropriately, and he had
> good hygiene.  He rocked constantly and his body shook at times during
> the interview.  He was cooperative.  His speech was quiet.  His affect
> was flat and he reported his mood as "my back hurts."  He had good
> eye contact.  His thought content and stream of thought were within
> normal limits, during the interview despite his report of hallucinations
> and delusions.  He displayed average to low average intelligence.  He
> missed all the numbers in the serial sevens and got one number right on
> the serial threes.  He was oriented to person, place, and date.  His
> memory for historical events was fair; he was able to recall three of
> three items immediately and after five minutes.  He could do four digits
> forward and two digits backward.  He reported the current and past
> presidents and he identified the states surrounding Washington as
> Georgia and Florida, but changed his mind and said South Dakota,

---

[2]Tr. 99 is the state agency psychologist's recreation of Dr. Schultz's
evaluation in shortened terms.  The Court will cite to the original evaluation at Tr.
368.

ORDER GRANTING DEFENDANT'S MOTION . . . - 12

> Idaho, and California.  He interpreted the proverb about the apple and tree as "you're part of your family and you're the stupid one as you don't fall too far from the tree."  He reported that he would "run" if he smelled smoke in a crowded theater.  He reported hallucinations and demonstrated delusional thinking, and he denied current suicidal ideation.

Tr. 368.  The record shows the ALJ did not accurately represent the mental status examination results in her opinion.  However, any resulting error from this is harmless as the ALJ provided three other reasons for rejecting the opinion that Plaintiff failed to challenge.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

Plaintiff also argues the ALJ failed to properly consider Plaintiff's drug and alcohol use under *Bustamante v. Massanari*, 262 F.3d 949, 954-955 (9th Cir. 2001).  ECF No. 26 at 15.  Under *Bustamante*, an ALJ must complete the five step sequential evaluation considering all limitations, even those resulting from drug and alcohol use; if the evaluation results in a finding of disability, the ALJ then must repeat the five step evaluation removing any limitations resulting from drug or alcohol use.  *Id*. at 955.  However, the ALJ specifically stated that she included limitations from Plaintiff's drug and alcohol use in her residual functional capacity determination, which did not result in a finding of disability.  Tr. 29.  Therefore, she did not error in this regard.

### 3.     Reese Copeland, M.A.

On January 10, 2013, Mr. Copeland completed a Mental Residual Functional Capacity Assessment (MRFCA) form.  Tr. 506-508.  He opined that Plaintiff was severely[3] limited in the abilities to understand and remember detailed instructions,

---

[3]Severely limited is defined as an "[i]nability to perform one or more basic work-related activities."  Tr. 506.

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

to carry out detailed instructions, and to set realistic goals or make plans independently of others. *Id.* He stated that Plaintiff was markedly[4] limited in the abilities to remember locations and work-like procedures, to understand and remember very short and simple instructions, to carry out very short simple instructions, to maintain attention and concentration for extended periods, to sustain an ordinary routine without special supervision, to make simple work-related decisions, to complete a normal work-day and workweek without interruptions from psychotically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, and to travel in unfamiliar places or use public transportation. *Id.* He additionally opined that Plaintiff was moderately[5] limited in the abilities to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, to work in coordination with or proximity to others without being distracted by them, to interact appropriately with the general public, to ask simple questions or request assistance, and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 506-507.

///

---

[4]Markedly limited is defined as a "[v]ery significant interference with basic work-related activities i.e., unable to perform the described mental activities for more than 33% of the day." Tr. 506.

[5]Moderately limited is defined as a "[s]ignificant interference with basic work-related activities i.e., unable to perform the described mental activity for at least 20% of the work day up to 33% of the work day." Tr. 506.

Unlike Drs. Strosahl and Schultz, Mr. Copeland is not an acceptable medical source; instead, he is considered an "other source." *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).  Generally, the ALJ should give more weight to the opinion of an acceptable medial source than to the opinion of an "other source," such as a therapist. 20 C.F.R. §§ 404.1513(d), 416.913(d).  An ALJ is required, however, to consider evidence from "other sources," 20 C.F.R. §§ 404.1513(d), 416.913(d); S.S.R. 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232.  An ALJ must give reasons that are specific and germane to each "other source" to discount their opinions. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053-1054 (9th Cir. 2006).

The ALJ gave Mr. Copeland's opinion "no weight" because (1) the opinion gave no commentary or references to any form of evidence to support it, (2) the whole of Mr. Copeland's therapy records do not contain objective psychological findings, (3) he relied heavily on Plaintiff's unreliable self-reports, (4) he had expressed himself as an advocate for Plaintiff, and (5) the opinion was inconsistent with Plaintiff's reported activities.  Tr. 31.

Of these reasons, Plaintiff only challenges the ALJ's assertion that Mr. Copeland's submissions did not contain objective psychological findings, arguing that mental status examinations are objective psychological findings.  ECF No. 26 at 8-13.  However, Mr. Copeland, never completed a mental status exam on Plaintiff.  Tr. 401-402, 404-405, 413, 416, 500-504.  In fact a review of the records supports the ALJ's determination that Mr. Copeland did not indicate any objective psychological testing or observations throughout the records he submitted.  *Id*. The ALJ did not error in his treatment of Mr. Copeland's opinion.

## C.    Treatment of Evidence

Plaintiff argues the ALJ neglected evidence of the disabling effects of Plaintiff's spinal stenosis and nerve root compression.  ECF No. 26 at 19-20.

However, the majority of the citations Plaintiff provides in his briefing are actually his statements to providers and not objective evidence. *See* Tr. 374, 470, 513, 650, 667. Nevertheless, reviewing the evidence as a whole, the Court finds that the objective evidence does show that Plaintiff had decreased sensation in three fingers of the left and positive straight leg raising tests. Tr. 375, 514, 528, 652. Despite these few records supporting Plaintiff's assertions, the ALJ summarized the evidence supporting her findings in great detail in the decision, including imagining results, examination results, and observations. Tr. 28-29 *including citations to* Tr. 380 (normal range of motion in back and neck), Tr. 358 (Plaintiff denied any numbness and tingling or lower extremity weakness), Tr. 568 (Plaintiff denied numbness and parenthesis and had a negative straight leg raising test), Tr. 374-375 (In August 2012, Plaintiff reported numbness and tingling in both hands and right leg but demonstrated intact reflexes and motor strength in all extremities with some limited sensation only in his left hand), Tr. 543 (In February 2013 he had a stable gait and intact gross sensation), Tr. 534 (In May 2013, Plaintiff had a stable gait). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Here, there is evidence supporting both the ALJ's determinations and Plaintiff's assertions; therefore, the Court will not disturb the ALJ's determination.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 28**, is **GRANTED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 26**, is **DENIED**.

///

///

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED August 31, 2016.



_____

JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 17